Hershfang, J.
During the trial, plaintiff objected to and requested a Report on four evidentiary rulings. Those objections are the sole basis of the Report before us. Because the plaintiff has failed to satisfy significant requirements of the then-existing Dist./Mun. Cts. R. Civ. R, Rule 64[1], particularly that and how she was harmed by the rulings, we cannot reach the issues the Report raises.
To put the matter in its context, we start with the Report. It simply lists appellant’s claim of error on the four evidentiary rulings this way:
1. The exclusion from evidence of alleged statements by the plaintiff to the defendant’s employee during her detention, which evidence, when elicited by the plaintiff’s own counsel, the court ruled to be hearsay.
2. The admission into evidence by the defendant of a document entitled “Statement from Store Detective Bussey,” (Exhibit “E” annexed hereto), which the court admitted as a business record exception to the hearsay rule. See G.L.c. 233, §78.
3. The admission into evidence of an emply toothpaste box, which the statement of the Store Detective Bussey indicated the plaintiff had replaced on a store shelf and which Store Manager Rick Ramos testified he received from Detective Bussey after telling store Detective Bussey to retrieve it.
4. The admission into evidence of Loss Prevention Field Manager John Durgin’s report, dated December 3, 1990 (Exhibit “F” annexed hereto) as a business record, See, G.L.c. 233, §78, which report the court ruled had not been ordered to be produced pursuant to the plaintiff’s Request for Production of Documents.
By its express terms, the Report also incorporates by reference the trial judge’s voluntary[2] “Memorandum of Decision and Order” (“Memorandum”), plaintiff/ appellant’s request for Report, her Request for Rulings of law and the Judge’s rulings on those requests. None of those requests for rulings is at issue here. Finally, the Report also incorporates the contested reports of detective Bussey (the Bus-sey report) and that of the chief store detective (the Durgin report.)
On the other hand, the Report says nothing more with respect to how appellant was harmed by any of the alleged errors.
To understand more clearly the context in which this case arose and this appeal came before us, we turn to the Memorandum.
On 11/20/90, the plaintiff was shopping with her daughter at the *248 defendant’s Roslindale store, which she regularly patronized. At approximately 8:30 p.m., Robert Bussey, the defendant’s store detective, observed the plaintiff take a box of toothpaste and a bottle of hand cream from the shelves, remove the price sticker from the bottle and the tube of toothpaste from its box, place both items in her coat pocket, and replace the empty box upon a shelf. The plaintiff proceeded through the register and paid for the groceries in her carriage. As she was heading for the exit, she caught the store detective watching her and immediately sat down upon a bench near the door. When Bussey approached the plaintiff and asked for the return of “the store merchandise” without specification, the plaintiff said, “All I have in my coat pocket is toothpaste and hand cream.”
The plaintiff agreed to accompany the store detective to the store’s back room a short distance away. As she arose from the bench, she slipped, pushing the store detective in the process, and grabbed the basket portion of her carriage to regain her balance. This momentary slip may have afforded the plaintiff an opportunity to place the items in her pocket in the carriage.
In the back room, the plaintiff volunteered her clothing to be searched, which search proved fruitless. When Bussey asked about the toothpaste and hand cream which she said were in her pocket, the plaintiff denied ever saying such a thing. The plaintiff began yelling and became very emotional. At no time did Bussey or anyone else (including the detail police officer called to the back room) ever physically touch the plaintiff during the brief interaction.
Responding to the shouting he heard in the back room, Richard Ramos, the store manager, determined the situation to be highly charged, apologized to the plaintiff and invited her to the manager’s office in order to defuse and calm her emotional state. As the plaintiff was leaving the store after she had regained her composure, she warned, “I’m a third-year law student, and you’ll be hearing from me.”
Feeling aggrieved, plaintiff sued claiming false imprisonment and intentional infliction of emotional distress. After trial, the court found for defendant on both counts. With respect to the claim of false imprisonment, the court cited G.L.c. 231, §94B (against claim of false imprisonment merchant may interpose that detention was based on reasonable belief person was committing or attempting shoplifting, provided manner and period of detention were reasonable.) Again we quote from the Memorandum.
Under the circumstances of the instant action, the defendant was warranted in detaining the plaintiff. A trained store detective had witnessed the plaintiff tampering -with and concealing two items of merchandise and then attempting to exit the store. The plaintiff exhibited consciousness of her guilt when she volunteered the nature of the two items in her pocket: a tube of toothpaste and bottle of hand cream, which were the very types of items the store detective had seen her remove from the shelves and place in her pocket. The period of detention lasted around 20 minutes and was conducted out of the public eye upon the plaintiff’s consent. The behavior of the defendant’s employees was governed by store policy and was neither abusive nor threatening; and the plaintiff was never physically touched.
With respect to plaintiff’s claim of intentional infliction of emotional distress, the *249 Memorandum says this:
It is not immediately apparent whether the plaintiff is claiming intentional or negligent infliction of mental or emotional distress on the part of the defendant, but the plaintiff cannot prevail under either theory. Store Detective Bussey’s brief, private, and controlled confrontation with the plaintiff did not constitute proof of the type of “extreme and outrageous” conduct necessary to sustain an allegation of the intentional infliction of emotional distress. See Agis v. Howard Johnson Co., 371 Mass. 140, 144 145 (1976); Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987); George v. Jordan Marsh Co., 359 Mass. 244, 254-255 (1971); RESTATEMENT (SECOND) OF TORTS, Section 46, Comment d (1965). In order to recover under a theory of negligent infliction of emotional distress, a plaintiff must corroborate his/her mental distress claim with sufficient objective evidence of harm. Payton v. Abbott Labs, 386 Mass. 540, 547 (1982). Sullivan v. Boston Gas Co., 414 Mass. 129, 137-138 (1993). The plaintiff’s mere allegation that she, an asthmatic, suffered an asthma attack some time subsequent to the incident, without any competent evidence linking the attack to the incident, was insufficient objective evidence of harm. Furthermore, her claim that she suffered emotional distress is vitiated by her immediate control and presence of mind, enabling her to shout at the defendant’s employee and threaten another with a lawsuit.
During the course of the trial, plaintiff timely filed a Request for Report which, the Report says, was later followed by a Draft Report. In each, plaintiff alleges error on the four evidentiary rulings noted earlier.[3] The first concerns the exclusion, on hearsay grounds, of alleged statements of plaintiff to defendant’s employee during plaintiffs detention. Numbers two and four concern the admission as business records of the Bussey and Durgin reports of the incident. Ruling #3 concerns the introduction into evidence over objection as to lack of foundation of an empty toothpaste box.
However, it is elemental that to be successful the appellant must show more than simply abstract wrong rulings^ on evidentiary questions, even assuming, as we do not, that each of the rulings was wrong.[4] Rather, appellant must provide the reviewing court with a record which connects the challenged rulings to the trial judge’s ultimate findings, and in a way which makes clear that and how appellant was harmed. See, MacDonald v. Adamian, 294 Mass. 182, 190 (1936).
In her Request for Report, appellant does set out some of the context of both the Bussey and Durgin reports. That evidence may well have been relied upon by the trial judge in reaching her conclusions. However, we are left to guess what other evidence, if any, the trial judge was presented with or relied on. For example, we know that plaintiff testified and that the judge found that plaintiff acknowledged she accompanied Bussey voluntarily to the back room. We also know from the Memorandum that defendant had at least one live witness. But we do not know-what each of those witnesses testified to, whether there were other witnesses or *250 evidence, nor what inferences were or could have been drawn as a consequence.
We thus find ourselves in circumstances similar to that faced by the court in MacDonald v. Adamian.
The record is confused and unsatisfactory. It contains no statement that all the evidence bearing on the requests for rulings is reported ...
On an appeal like the present findings of fact made on oral evidence are not reviewable ... The general finding for the plaintiff imports the drawing of all rational inferences to support that conclusion permissible on the evidence and a finding of all subsidiary facts conducing that result of which the testimony is susceptible. The credibility of the witnesses is exclusively for the trial judge. Id. at pages 189-191.
To like effect, See, Arch Medical Associates, Inc. v. Bartlett Health Enterprises, Inc., 32 Mass. App. Ct. 404,406 (1992).
The difficulty we have in evaluating [appellant’s] contentions is that we have absolutely no idea what transpired at the [trial]... [and] we have no basis for concluding, that the [uncontested] evidence did not support the judge’s findings.
Accordingly, Report dismissed.

While of little comfort to this plaintiff/appellant, the constraints of review applicable in this case have been lifted with the adoption, effective July 1,1994, of the new District/Municipal Rules for Appellate Division Appeal. See, especially, Rules 8A, 8B and 8C.

The Trial Judge’s “Memorandum,” which sets forth findings and rulings, is, of course, not required under the rules applicable to the District/Municipal Court Departments. Compare Mass. R. Civ. R, Rule 52(a). (Written finding of facts required in civil trials in Superior Court Department.)

The language of the Report with respect to these four claims of error is set forth above, at p. 247.

While, as noted, we know too little about and thus cannot reach the questions appellant poses, it may serve to note that a defendant’s denial of an accusation, the first of appellant’s apparent claims of error (see fn. 2 above), should be excluded as hearsay. Commonwealth v. Hosey, 5 Mass. App. Ct. 138, 141 (1977); Commonwealth v. Henry, 37 Mass. App. Ct., 429, 433 (1994). With respect to the general issue of the availability over objection of the store detectives’ reports, See, Julian v. Randazzo, 380 Mass. 391, 394 (1980). (Police reports should ordinarily be excluded when offered by the party at whose instance they were made).