Wernick, J.
Plaintiff J. William Wright, III (“Mr. Wright”) filed this civil rights action against the defendants after officials from Bromfield High School in the Town of Harvard denied him access to his son’s academic records. The defendants, which include his wife, his wife’s legal counsel, the Town of Harvard and Bromfield school officials, have filed motions to dismiss the claims against them for failure to state a claim upon which relief can be granted.[2] For the following reasons, the motions to dismiss will be allowed.
BACKGROUND
The following facts, taken from the plaintiffs complaint, are accepted as true for purposes of the motions to dismiss.
Mr. Wright and his wife, Linda S. Wright, were divorced on November 9, 1995. The two children of the marriage, John and Sean, resided with their mother after the divorce.
On October 6, 1995, a judge of the Probate Court issued an ex parte abuse prevention order against Mr. Wright pursuant to G.L.c. 209A, ordering him to have no contact with his children or his former wife. That order was extended several times, and remained in effect at all times relevant to this action.
On November 23,1998, a judge of the Probate Court awarded Mrs. Wright sole legal custody of Sean Wright.
On December 17, 1998, Mr. Wright visited Brom-field High School, where his son Sean attends school, and spoke with defendant Delma Josephson, the Dean of Students. Ms. Josephson informed Mr. Wright that she could not discuss Sean’s academic status with Mr. Wright at that time. The following day, Mr. Wright returned to the school and spoke again with Ms. Josephson. She informed Mr. Wright that due to the Probate Court’s award of sole legal custody to Mrs. Wright and due to the restraining order against him, school officials could not discuss Sean’s academic status with him. Ms. Josephson further indicated that if Mr. Wright returned to the school again, she would have him arrested for violation of the restraining order.
On Monday, December 21, 1998, Mr. Wright returned to Bromfield High School, where he scheduled a meeting with Bromfield’s principal, Mr. Mihran Keoseian, for the following morning. When Mr. Wright met with Mr. Keoseian the following day, Mr. Keoseian informed him that he had received information from Mrs. Wright and from Mrs. Wright’s attorney concerning the change in Sean’s custody status, and that due to the change in custody and the outstanding restraining order against him, the school would not provide Mr. Wright with information about his son.
As a result of the school’s refusal to provide him with his son’s academic records, Mr. Wright filed this action against the defendants for violations of the state and federal civil rights law, and for intentional infliction of emotional distress.
DISCUSSION
The defendants seek dismissal of Mr. Wright’s complaint for failure to state a claim upon which relief can be granted. When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the Court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn from them in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. A “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “[A] complaint is not subject to dismissal if it could support relief on any theory of law.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
The defendants advance numerous arguments in support of dismissal; this Court will address each count in turn.
A. Count I — Violation of 42 U.S.C. §1983, et seq,
Count I of Mr. Wright’s complaint alleges that the defendants’ conspiracy to deprive him of his son’s academic records constitutes a violation of the federal civil rights laws as set forth at 42 U.S.C. §1983. The defendants have moved to dismiss this claim arguing that Mr. Wright did not have a protected right of access to his son’s records, the denial of which would give rise to a violation of civil rights laws, and further that the defendants cannot be held responsible for a civil rights violation for mere compliance with law.
*358 G.L.c. 208, §31, the statute that Mr. Wright bases his federal civil rights claim upon, states that a custody order “shall not negate or impede the ability of the non-custodial parent to have access to the academic .. . records of the child . . .” The defendants contend, however, that a more specific statute controls the release of Sean’s academic records in the instant case. G.L.c. 71, §34H, the statute relied upon by the defendants in refusing Mr. Wright access to his son’s academic records, states that a noncustodial parent is entitled to access to academic and other such records “unless said parent[’s]... access to their child or to the custodial parent has been restricted by a temporary or permanent protective order . . .” §34H further states that if the noncustodial parent requests such information, the school “shall immediately notify the custodial parent of the receipt of the request ...” and that such information would be released to the noncustodial parent “unless the custodial parent provides to the principal of the school documentation of any court order which prohibits contact with the child . ..”
“[I]n any §1983 action the initial inquiry must focus on whether the two essential elements of a §1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.” Langton v. Secretary of Public Safety, 37 Mass.App.Ct. 15, 19 (1994), quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981). This Court finds that, pursuant to the plain language of §34H, Mr. Wright will not be able to satisfy the second requirement for a civil rights claim, as he had no right to his son’s academic records.[3]
As Mr. Wright cannot point to a protected “right” to the records, he cannot therefore pursue a violation of his civil rights. Count I must accordingly be dismissed.
B. Count II — Violation of the Massachusetts Civil Rights Act, G.L.c. 12, §111
The Massachusetts Civil Rights Act (“MCRA”) provides a private right of action for individuals “whose exercise or enjoyment of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with . . .” G.L.c. 12, §111. ‘To establish a claim under the (MCRA) the plaintiff)] must prove that (1) [his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by ‘threats, intimidation or coercion.’ ” Swanset Development Corp. v. Taunton, 423 Mass. 390, 395 (1996). As stated previously in connection with his federal civil rights claim, Mr. Wright did not have a statutorily or constitutionally recognizable right of access to his son’s records. A claim pursuant to the MCRA will therefore not lie.
C. Count III — Intentional Infliction of Emotional Distress
To state a claim for intentional infliction of emotional distress, Mr. Wright must allege “(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct ... (2) that the conduct was ‘extreme and outrageous,’ was ‘beyond all possible bounds of decency' and was ‘utterly intolerable in a civilized community,’... (3) that the actions of the defendant were the cause of the plaintiffs distress . . . and (4) that the emotional distress sustained by the plaintiff was ‘severe’ and of a nature ‘that no reasonable man could be expected to endure it.’ ” Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976) (citations omitted) (emphasis added). The facts alleged by Mr. Wright in his complaint evidence that all of the defendants acted in accordance with law and merely followed the guidelines set forth by the Legislature for precisely the situation that presented itself. The defendants acted properly in accordance with the requirements of G.L.c. 71, §34H, and such conduct cannot be considered “extreme and outrageous” so as to give rise to a claim for intentional infliction of emotional distress. Count III must therefore be dismissed. See Beecy v. Pucciarelli, 387 Mass. 589, 596 (1982) (where conduct could not be characterized as extreme and outrageous, claim for intentional infliction of emotional distress was properly dismissed).
ORDER
For the foregoing reasons, it is therefore ORDERED that the defendants’ motions to dismiss are ALLOWED.

 As the defendants’ motions advance similar arguments in support of dismissal, this decision will address those motions collectively.

 Although Mr. Wright argues that the two statutes are in conflict, this Court does not agree. G.L.c. 208, §31 is a statute of general application, which merely establishes the principle that a noncustodial parent may still have access to academic and medical records; G.L.c. 71,§34H, enacted years later in 1998, specifically sets forth the procedures for release of academic and other records to noncustodial parents and more clearly delineates the responsibilities of school officials and the rights of parents. This Court finds no conflicting provision in the statutes: while §31 gives noncustodial parents right of access to their children’s records, §34H defines the extent and limitations upon that access. Where two statutes concern the same subject matter, every attempt should be made to interpret the statutes harmoniously. Yeretsky v. City of Attleboro, 424 Mass. 315, 319 (1997).
However, even if this Court were to agree with Mr. Wright that the statutes were in conflict, it would be bound to apply the strict provisions of §34H rather than the more inclusive provisions of §31. See Pereira v. New England LNG Co., Inc., 364 Mass. 109, 118 (1973) (“[i]f a general statute and a specific statute cannot be reconciled, the general statute must yield to the specific statute .. . [particularly where] the specific statute was enacted after the general statute”).